**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TAMMY FAULKNER, et al.,

              Plaintiff,

v.

AERO FULFILLMENT SERCVICES,

              Defendant.

Case No. 1:19-cv-268

Dlott, J.
Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

Through counsel, Plaintiffs Tammy Faulkner and Tina Moore filed suit against Aero Fulfillment Services, alleging gender-based pay discrimination in their employment. Currently before the Court is Defendant's motion for sanctions under Rule 37(b) and (e), Fed. R. Civ. P. Although the undersigned finds that some sanction is appropriate, the undersigned declines to impose the level of sanctions proposed by the Defendant.

## I.     Background of Dispute

In January 2020, the parties first contacted the undersigned for assistance in resolving a dispute over the scope of discovery sought by the Defendant, which Plaintiff believed was overbroad and not proportional to this case. No formal motions were filed. Instead, pursuant to local practice, the undersigned resolved the dispute through an informal telephonic hearing held on January 24, 2020. The resolution was memorialized through a Minute Entry order that read in pertinent part:

(1) Plaintiffs to identify all employment history with addresses and dates of employment from high school graduation to present; (2) Plaintiffs to submit supplemented damage calculations by 2/7/2020; (3) Plaintiffs to produce

last three years of social media information; (4) Plaintiffs to supplement responses to clarify that emotional distress claim is of the "garden variety;" (5) Plaintiff Moore to produce IRS release form 2010-2013 tax returns (Plaintiffs previously agreed to produce 2014-present and 2010-present for Faulkner); (6) Plaintiffs to produce all relevant or workplace related communications between Plaintiffs and current or former co-workers, including text messages, private email or other text messaging apps such as Facebook Messenger, as well as a list of phone conversations.

(Minute Entry filed 1/24/2020).

Nearly four months after that first conference, the undersigned convened a second telephonic discovery conference in an attempt to resolve another dispute, this time involving a fraction of the third category of information identified in the Minute Entry: the production of "social media information."  Defendant does not quarrel with either of the Plaintiffs' production of the other categories of information compelled by the Court in January.  However, Defendant argues strenuously that one of the two Plaintiffs, Ms. Faulkner, failed to fully disclose one of her social media accounts (LinkedIn) and deliberately flouted this Court's Order by deleting that account following her inadequate production.[1]  Unable to resolve the parties' second dispute informally, the Court invited Defendant to file a formal motion, with limited briefing and an expedited briefing schedule.[2]  Defendant filed its motion for sanctions on May 27, 2020. Plaintiff filed her response on May 29, and Defendant filed its reply on June 3.

---

[1] Based on the record presented, it appears that Plaintiff Faulkner produced all other relevant "social media information," including Twitter and FaceBook account information identified in her responses to Defendant's interrogatories.  (Doc. 19-5, at 13).

[2] After both parties requested the opportunity to file more formal briefs rather than resting on informal submissions, the Court directed Defendant's motion and Plaintiff's response to be "limited to a 5 page limit," and "permitted" Defendant to file a discretionary "4 page reply."  As docketed and inclusive of exhibits, the Defendant's motion spans 81 pages, Plaintiff's response spans 21 pages, and Defendant's reply offers another 15 pages.  If one subtracts "motion" pages, exhibits, signature pages, and certificates of services, the parties' memoranda comply with the letter of the page restrictions if not precisely the spirit intended.

## II.  Analysis

The January conference addressed the relevance and breadth of Defendant's discovery requests concerning six categories of information, two of which bear on the current dispute.  In the first category, Defendant sought extremely detailed information concerning "each and every person or entity for whom [Plaintiffs] have worked or attempted to work since High School."  (*See, e.g.*, Doc. 19-5, Interrogatory No. 15, subparts (a) through (h)).  The Court ordered each Plaintiff to supplement her prior responses to reflect all employers since her high school graduation, but limited the level of detail to "addresses and dates of employment."  In Plaintiff Faulkner's case, the ruling resulted in her filing supplemental discovery responses, dated February 19, 2020, to reflect an additional 18-year period of employment, from 1990-2008, prior to her employment with Defendant in April 2008.  (Doc. 19-8).

Although the prior employment category has some relevance to the instant dispute, the most relevant category discussed in January was the category of "social media information."  Defendant initially served broad Requests for Production that sought:

> 12….all photographs, comments, updates, posts, and/or videos posted by you or anyone on your behalf on your own Facebook account, LinkedIn account, MySpace account, Twitter account, YouTube, Instagram, Snapchat, internet profile, or any other social networking or internet site of yours from January 10, 2010 to the present." (Doc. 19-1, Request 12).

> 13. …all profiles, posts, messages, updates, wall comments, chats, causes joined, activity streams, and applications on your Facebook account, LinkedIn account, MySpace account, Twitter account, YouTube, Instagram, Snapchat, internet profile, or any other social networking or internet site of yours from January 10, 2010 to the present.

> 14…. all profiles, posts, messages, updates, wall comments, chats, causes joined, activity streams, and applications that were made or posted by you or on your behalf on any Facebook account, LinkedIn account, MySpace account, Twitter account, YouTube, Instagram, Snapchat,

> internet profile, or any other social networking or internet site from January
> 10, 2010 to the present.

(Doc. 19-1, Requests 12-14).  Notably, Defendant's requests did not specify the format for the production of such social media and/or related "social networking or internet" information. *See* Rule 34(b)(1) (stating that discovery request "may specify the form or forms in which electronically stored information is to be produced.").

During the January telephonic conference, Plaintiff objected to the scope of production as well as to the 10-year period, citing *Howell v. Buckeye Ranch, Inc.*, 2012 WL 5265170 (S.D. Ohio Oct. 1, 2012) (Abel, M.J., holding that request for access to the entirety of plaintiff's private social media accounts was overbroad, but that plaintiff instead would be required to produce the "relevant" portions of the private sections of the accounts).  Specifically limiting only the time period, the undersigned ordered Plaintiff to produce "social media information" for a three-year period.

Plaintiff's counsel has submitted a Declaration explaining that following receipt of the Court's January ruling, he obtained Ms. Faulkner's login credentials and followed the instructions given on the LinkedIn website in order to "request[] a download of Ms. Faulkner's account data."  (Doc. 20-1 at ¶ 3).  On January 31, 2020, LinkedIn provided a hyperlink that Plaintiff used to download the "full data archive…in Microsoft Excel format." (*Id.* at ¶ 4, emphasis added).  Plaintiff produced the Excel file to Defendant, including all LinkedIn data, on February 19, 2020.  However, soon after downloading her full LinkedIn account and apparently unbeknownst (at first) to counsel, Plaintiff deactivated or deleted that account.

According to the "Account Status History" information on the downloaded Excel spreadsheet, Plaintiff did not create her LinkedIn account until March 3, 2019, one month

4

prior to filing an EEOC charge against her employer and near the end of her employment. Her LinkedIn profile listed only one position – her then-current position as Operations Manager at Aero Fulfillment Services.  At the time she created her LinkedIn account, she had held that position for 11 years.  (*Id.* at ¶ 7).   The "messages" spreadsheet shows that 22 messages were either sent to or received by Plaintiff during the months that her account remained active, with the earliest message dated March 14, 2019, and the last dated January 7, 2020.  The spreadsheet includes the name of the sender, the name of the recipient, the date and time of the message, the subject of the message, message content,[3] and whether the message was sent to or from Plaintiff.  (*Id.* at ¶ 8).

Following both Plaintiffs' supplemental production, defense counsel reached out to plaintiffs' counsel seeking follow-up information.  For example, in an email dated March 5, 2020, defense counsel requests additional "non-facebook social media data" for both plaintiffs and specifically inquires if that data can be reproduced in a different format than initially produced, and then resubmitted to Defendant in the form of "screenshots or as html files."  (Doc. 19-2 at 11).  An email dated March 9, 2020 reiterates that Defendant is seeking additional "screenshots" for the social media information already produced by Plaintiffs for multiple social media accounts including Snapchat (which the email acknowledges recently "came through"), LinkedIn profile(s) and messages, posts, tweets, profiles followers, and direct messages received and sent from Twitter, and Plaintiff Moore's messages and comments on Instagram.   (Doc. 19-2 at 9).

---

[3]The spreadsheet filed in the electronic docket of this Court as an Exhibit to Plaintiff's response is not in the .csv Excel format.  Although short messages appear in full on the pdf version filed of record, a number of the 22 messages appeared to be truncated due to the size of the display field in the pdf format.  (*See* Doc. 20-7).  Plaintiffs' counsel has represented, and Defendant does not dispute, that all of the LinkedIn data was produced in .csv format, such that the "message" fields can be fully opened and read in Microsoft Excel.  (Doc. 19-2 at 6).  Even if that were not the case, a sufficient amount of the content can be read that contextually suggests that any "missing" message fragments are irrelevant.

Plaintiff's counsel initially responded by suggesting that he was willing to attempt to reproduce the information in a different format but with the caveat that:

> As for LinkedIn, Instagram, and Twitter data, the request to the social media providers does not let you specify what format the information is packaged in. It has been produced to you as it was presented to us. I am happy to explore solutions to this issue if you know of any.

(*Id.* at 10). From the email correspondence, the undersigned infers that the parties were able to work out the logistics for reproducing much of the social media account information for both Plaintiffs in the new format requested. An email from Plaintiffs' counsel dated March 31, 2020 reflects the inclusion of all relevant data in the additional "screenshot" format for Plaintiff Moore, and promises to "have Ms. Faulkner's for you later today." (Doc. 19-2 at 8). However, in a later email, counsel acknowledges a less-than-complete reproduction of Ms. Faulkner's data in the requested supplemental "screenshot" format. (*See* Doc. 19-2 at 7, "responsive documents attached"). The email specifically notes the omission of additional "screenshot" data for Ms. Faulkner's LinkedIn account, with the following explanation: "Ms. Faulkner deactivated her Linkedin shortly after we retrieved her data for this case. I could not reactivate it." (*Id.*)

In response, Defendant immediately requested that Plaintiff "pay the costs for a forensic expert …to restore the data." (Doc. 19-2 at 8). Plaintiff declined to do on grounds that Plaintiff had already produced her entire LinkedIn data file in the Microsoft Excel format, and was not required to re-produce the same information in any additional format. (*Id.* at 7). Defendant escalated its demands and ultimately filed the pending motion for sanctions, arguing that Plaintiff has produced only incomplete LinkedIn data and has spoliated evidence in direct violation of this Court's January order.

The undersigned views the issues presented in two parts:  (1) whether Plaintiff Faulkner produced the discovery ordered by this Court in January; and (2) whether Plaintiff violated her duty of preservation.  Based on the record presented, the Court concludes that Plaintiff Faulkner initially complied with her obligation to produce the entirety of her LinkedIn account in the format in which LinkedIn produced it to her.  However, when she subsequently deactivated that same account, Ms. Faulkner unquestionably violated her duty to preserve (potentially) relevant evidence.  On the one hand, the harm to Defendant appears to be non-existent but on the other hand, the action cannot be easily undone.  Considering all circumstances presented, the undersigned concludes that Plaintiff be admonished as a sanction.  However, if the subsequent evidentiary record suggests that additional relevant evidence was erased or deleted by Plaintiff Faulkner, the Court will impose more significant sanctions.

### 1.  Defendant's Rule 37(b) Motion and the Format of Plaintiff's Production

Defendant has filed a motion for monetary and non-monetary sanctions based upon its argument that Plaintiff has committed the most egregious of discovery violations: failing to comply with this Court's January Minute Entry Order compelling her to produce her "social media information."  When a party disobeys a discovery order, the court "*may* issue further just orders," Rule 37(b)(2)(A), but "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the failure was substantially justified or other circumstances make an award of expenses unjust.*"  Rule 37(b)(2)(A) and (C) (emphasis added).

Contrary to Defendant's position, the undersigned finds no discovery violation or violation of the Court's Order. The Court narrowed the scope of Defendant's discovery requests but ordered Plaintiff to produce 3 years of "social media information." Defendant's original requests did not specify any particular format, although they could have. *See* Rule 34(b)(1). During the January telephonic conference, counsel briefly discussed the logistics of "how to" obtain the social media information ordered by the Court, and defense counsel advised that the information could be obtained by following the social media providers' procedures. (S*ee* Doc. 19-2 at 6).

Defendant points to Rule 34(b)(2)(D) which states that, if no form for the production of electronically stored information is specified, the responding party "must state the form or forms it intends to use" prior to production. However, counsel's January discussion reasonably conveyed that the production would be in the format produced by following the LinkedIn website instructions.[4] Plaintiff Faulkner's production also complied with Rule 34(b)(2)(E)(ii), in that the data was produced "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Despite Defendant's protests, the undersigned finds upon examination that the information produced by Plaintiff in the Excel spreadsheet format is readable and usable.[5]

Defendant repeatedly stresses that counsel "admitted she violated the Court's January 24, 2020 Order," quoting an email in which counsel wrote: "**You'll notice an absence of Linkedin data.**" (*See, e.g.*, Doc. 19 at 4, Defendant's emphasis original).

---

[4]That said, the undersigned strongly urges counsel for both parties to pay greater attention to pre-production discussions of ESI format in the future.

[5]Defendant now argues that Plaintiff's production did not include metadata. However, no metadata was requested by Defendant in its original Requests for Production, discussed in January, or included in the Court's Minute Entry Order.

Contrary to Defendant's insistent interpretation of that statement, in context Plaintiff's counsel made no admission, and has continually denied Defendant's claim that Plaintiff Faulkner failed to produce her entire LinkedIn account data.  The referenced statement does not pertain to Plaintiff's initial compliance with the Court's Order, but instead to counsel's cooperative attempt to re-produce the exact same account information in a "new and improved" "screenshot" format that Defendant decided – after the initial production – that it preferred.

Defendant was not legally entitled to a second production of the LinkedIn account data in a different format.  Rule 34(b)(2)(E)(iii) clearly states that once produced, a party "need not produce the same electronically stored information in more than one form." In short, the undersigned finds no violation that would warrant sanctions under Rule 37(b).

### 2. The Violation of the Duty of Preservation Under Rule 37(e)

The fact that Plaintiff did not violate her duty of production in this case does not mean that her conduct was above reproach.  A different provision of Rule 37 governs the "Failure to Preserve Electronically Stored Information."  Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation **may**:
>
> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or

**(C)** dismiss the action or enter a default judgment.

*Id.* (emphasis added). Sanctions under Rule 37(e) are discretionary. Under Rule 37(e)(1), the court "may order measures no greater than necessary to cure…prejudice" regardless of whether the loss of ESI was deliberate or intentional. However, if the party acted intentionally "to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes an adverse presumption and/or an adverse jury instruction, or even dismissal or default judgment. "The party alleging spoliation has the burden of proof." *Yoe v. Crescent Sock Co.*, 2017 WL 5479932 at *9 (E.D. Tenn. Nov. 14, 2017) (citing *Byrd v. Alpha Alliance Inc. Corp.*, 518 Fed.Appx., 380, 383-84 (6th Cir. 2013)).

Defendant argues that because Plaintiff's deletion of the account was deliberate, she should be sanctioned severely. Plaintiff's counsel offers no explanation whatsoever for why Plaintiff Faulkner deleted her LinkedIn account shortly after producing its contents to Defendant. Defendant insists that the destruction was intended to deprive it of access to the data, but the production of the data prior to the deletion undercuts that allegedly nefarious purpose. Perhaps Ms. Faulkner simply did not understand her duty of preservation – a duty incumbent upon her counsel to relate to her. Regardless of her motive, there is no doubt that Plaintiff violated her duty of preservation.

Apart from the issue of intent, Defendant complains that it is prejudiced because it no longer can verify whether Plaintiff disclosed *all* of the relevant data from her LinkedIn account, notwithstanding her representation that she did. Defendant asserts that the data received omits "the vast majority of the categories …contained in her profile before her spoliation," including "Honors," "Education," "Organizations," "Skills," "Comments," "Likes," "Photos," and "Shares." (Doc. 21 at 2). However, the LinkedIn instructions for

downloading data account information state that users will "only receive the categories of data that are applicable to your account and activities on LinkedIn.  For example, if you don't have certifications listed on your profile, you won't receive a Certifications file."  (Doc. 20-3 at 1).  Plaintiff has represented that she produced her full LinkedIn data file in the Excel format provided to her by that particular social media platform.  Although Plaintiff's later deletion of the account makes it impossible to verify the truth of that representation, the relevance of any hypothetically missing data fields from a LinkedIn account less than a year old to <u>any</u> claims or defenses in this case is speculative at best.

The record reflects that Plaintiff Faulkner began to work for Defendant in April 2008, and Defendant was her sole employer until sometime in 2019. (Complaint and Doc. 19-8).  Her lawsuit alleges unequal pay based upon her gender throughout her employment.  Although the undersigned previously ordered Plaintiff to disclose her employment history from "high school graduation to present," the Court required the production of "social media information" only for the last three years, not a full decade. The LinkedIn account existed for less than a year, and was created a month prior to the date Plaintiff filed her EEOC complaint.  The twenty-two messages sent and received over the months that Ms. Faulkner maintained the account reflect that the account was relatively little-used.[6]

Still, citing the potential relevance of employment history to Equal Pay cases, Defendant suggests that the deleted LinkedIn account *might* reveal that Plaintiff "*may* have misrepresented" her pre-2008 employment history, assuming she had listed any other prior employers on her account when she created the account eleven years later in

---

[6]Four of the first messages shortly after the account was created in March 2019 were from Plaintiff to others, and stated things like "Glad to see you on here. I'm just getting started on this site." (Doc. 20-7).

2019. (Doc. 19 at 6). Defendant argues that a misrepresentation uncovered as after-acquired evidence in employment discrimination cases, such as resume fraud, may curtail a former employee's damages.

While true as a general proposition of law, Defendant's argument fails to connect that proposition to the record presented. The likelihood that Plaintiff would have included any pre-2008 employment history on a little-used LinkedIn account that she created in 2019 is remote.[7] In any event, Plaintiff has provided other discovery responses that detail her pre-2008 employment history for the 18 years after high school prior to her employment with Defendant. Although the existence of alternate evidence is not an automatic "Get out of Jail Free" card, it is a relevant consideration.[8] As the advisory committee's note to Rule 37(e) explains:

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases…. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations.

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The undersigned finds the present case to be a situation in which it is reasonable to require Defendant to show some prejudice, which Defendant appears unable to do.[9] In context, the allegedly

---

[7]Of course, this pre-supposes that Plaintiff falsely represented that she produced her full archival account, as the data produced reflects only Plaintiff's long-term employment with Defendant.

[8]Defendant asserts that this Court's January order compelling production is equivalent to a "law of the case" ruling that all information compelled by that order was "material" such that "Plaintiff may not challenge the relevancy of the Linkedin data now." (Doc. 21 at 4, n.6). The undersigned disagrees. An initial ruling that general social media information is discoverable is not the same as a ruling that all social media information is material. Nor is the Court's preliminary discovery ruling under Rule 26(b) binding on a subsequent analysis of whether the loss of a specific piece of discoverable information is prejudicial. They are two different inquiries.

[9]In addition, Defendant argues that a screen shot presentation of the LinkedIn profile would be easier for a jury to understand compared to the excel spreadsheet format. Although the undersigned agrees that a

"lost" information (if any exists) appears to be unimportant to any issues in this case, and there is an abundance of alternative more relevant information produced by Plaintiff, including but not limited to her LinkedIn account in Excel format.

### 3. The Appropriate Sanction

Defendant seeks two types of monetary sanctions: the payment of $6,840 for a forensic expert to *attempt* to recover the deactivated LinkedIn account and "cure" the alleged prejudice under Rule 37(e), and payment of all of Defendant's attorney's fees and costs associated with this dispute as a "mandatory" sanction for the alleged failure to comply with the January order of production under Rule 37(b) and/or as a discretionary sanction under Rule 37(e). In addition, Defendant seeks a mandatory adverse jury instruction if the deleted LinkedIn data cannot be restored.[10] Defendant maintains that at a minimum, it should be permitted to recover the $6,840 expense for a forensic expert and all of Defendant's costs and attorney's fees.[11]

As discussed, no sanction under Rule 37(b) will be issued because Plaintiff did not violate the January order compelling production. Although she did violate her duty of preservation under Rule 37(e), a sanction under that provision is discretionary. Because Plaintiff previously produced her LinkedIn account and the Defendant can show no

---

screen shot would make for a prettier presentation, a jury will certainly be able to comprehend the information in its current format.
[10]The specifics of the adverse instruction sought by Defendant remain unclear to the undersigned given the arguable irrelevance of the hypothetically "missing" LinkedIn account data fields and lack of prejudice.
[11]Defendant implies that Plaintiff unreasonably drove up those fees and costs. Defendant points out that it was the Plaintiff who initially sought a telephonic conference when the parties could not resolve the instant dispute extrajudicially, and that Plaintiff's counsel initially stated that he would prefer to submit a more formal brief rather than simply relying on the informal submission made in advance of the telephonic conference. But defense counsel also expressed a desire for formal briefing, even though the undersigned made clear that Defendant was free to simply file of record what it had already submitted informally. The Court also emphasized that page limits were mandatory and that Defendant's reply memorandum was permissive. Although Plaintiff was in the wrong in deactivating her account, she did not violate the January order and should not be made to bear the full costs of over-lawyering on the record presented.

prejudice from Plaintiff's failure to preserve the data following production, the undersigned will admonish Plaintiff.  That said, the undersigned expects that both Ms. Faulkner and her counsel fully understand the seriousness of her offense and of her discovery obligations going forward.  The Court has shown great leniency based on the specific facts presented, but will not hesitate to impose much more serious sanctions for any further offense.

### III.   Conclusion and Order

 The Court being fully advised, **IT IS ORDERED**:

1. Defendant's motion for sanctions (Doc. 19) is GRANTED in part and DENIED in part;

2. Plaintiff Faulkner is hereby ADMONISHED that her actions in deleting her LinkedIn account following production of its contents violated her duty of preservation.  The Court cannot, and does not, condone such action.  Her actions were certainly inappropriate and will be met with harsh consequences should such activity transpire in the future;

3. Defendant's request for monetary sanctions is denied, and its request for an adverse jury instruction is also denied at this time but without prejudice to renew before the trial judge should further proceedings establish greater relevance of the LinkedIn account.


*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge